**Jacqueline Gonzalez JOHNSON, Plaintiff,**

v.

**Lee CANNON, as Sheriff of Pasco County and Phillip Wayne Armstrong, Defendants.**

**No. 96–201–CIV–T–17B.**

United States District Court, M.D. Florida, Tampa Division.

Nov. 19, 1996.

Joseph R. Gaeta, Joseph R. Gaeta, P.A., Ft. Myers, FL, for Jacqueline Gonzalez Johnson.

Keith C. Tischler, Powers, Quaschnick, Tischler & Evans, Tallahassee, FL, for Pasco County Sheriff.

Phillip Wayne Armstrong, Daytona Beach, FL, pro se.

## ORDER DENYING MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause comes before the Court on the following motions, responses, and related documents:

1. Plaintiff Jacqueline Gonzalez Johnson's ("Johnson") Amended Complaint and Demand for Jury (Dkt. 29).

2. Defendant Lee Cannon's ("Sheriff") Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 27).

3. Memorandum of Law in Support of Defendant Cannon's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 28).

4. Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. 32).

5. Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 31).

## I. *FACTUAL BACKGROUND*

The Complaint alleges that on or about April 7, 1994, Deputy Phillip Wayne Armstrong ("Armstrong"), who was employed by Defendant Sheriff Cannon, stopped Johnson for a vehicle and traffic infraction. Johnson states that she was given two traffic citations, and that Armstrong asked her if she was "willing to negotiate the tickets." (Dkt. 29). Johnson further alleges that Armstrong threatened to arrest her, and have her children removed to an HRS facility if she did not "negotiate" with him (Dkt. 29, 31). The Complaint alleges that Armstrong then proceeded to Johnson's residence, at which time he sexually assaulted Johnson.

Plaintiff alleges that Defendant Cannon has a custom of permitting or tolerating the unconstitutional use of force by its officers. Plaintiff also alleges that Defendant Cannon had received complaints of improper conduct by Armstrong from members of the public prior to April 7, 1994, but failed to investigate or take any measures to prevent such acts or terminate Armstrong. In particular, Plaintiff claims that Defendant Cannon failed to provide Armstrong with proper training in the way to handle traffic stops, deal with the public, interact with female members of the public, report to his supervisors, and with sensitivity training. Plaintiff also alleges that Defendant Cannon failed to ascertain, by administering well-known and standard tests, whether Armstrong was emotionally capable of carrying out his reasonably foreseeable duties. Further, Plaintiff claims that Defendant Cannon, having knowledge of Armstrong's improper acts, failed to adequately supervise him or warn the public of the potential threat posed by Armstrong.

The Complaint contains the following causes of action against the Sheriff: Count I—Action on Sheriff's violation of Johnson's Constitutional Rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and under 42 U.S.C. § 1983; Count II—Negligent Training; Count III—Negligent Employment; Count IV—Negligent Retention; and Count V—Negligent Supervision.

## II. *STANDARD OF REVIEW*

A complaint should not be dismissed for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.Proc., "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When reviewing a motion to dismiss, the court is required to view the complaint in the light most favorable to the plaintiff and accept all allegations of the complaint as true. *Colodny v. Iverson, Yoakum, Papiano & Hatch,* 838 F.Supp. 572 (M.D.Fla.1993) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Although the Court must take the allegations in the complaint as true when reviewing the motion to dismiss, it is not permitted to read into the complaint facts that are not there. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986); *Beck v. Interstate Brands Corp.,* 953 F.2d 1275, 1276 (11th Cir.1992).

## III. *FEDERAL CLAIMS*

### A. *COLOR OF LAW*

Only two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). *See Tillman v. Coley,* 886 F.2d 317, 319 (11th Cir.1989); *Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir.1989); *Cornelius v. Town of Highland Lake, Ala.,* 880 F.2d 348, 352 (11th Cir.1989).

Defendant Cannon argues that Deputy Armstrong was not acting under the color of law when the alleged misconduct occurred. "It is firmly established that a Defendant in a Section 1983 suit acts under color of state law when he abuses the position given to him by the State." *West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). "Generally, a public employee acts under color of state law while acting in his official capacity or while

exercising his responsibilities pursuant to state law." *Id.* at 50, 108 S.Ct. at 2255. According to the allegations in the Complaint, Armstrong abused the position of deputy which was given to him by the State. Johnson has alleged that Armstrong's misconduct occurred while he was on duty, wearing his uniform, wearing his badge, carrying a gun, utilizing a marked police vehicle, and that Defendant Armstrong stopped her by use of his authority as a Sheriff's Deputy. The Complaint clearly alleges that Armstrong used the authority given to him by the State in order to deprive Johnson of her constitutional rights.

■ Defendant Cannon is correct in stating that all acts of state employees are not under color of state law, yet the alleged facts in the instant case demonstrate that Armstrong was acting under color of state law. Defendant relies in part on *Thomas v. Cannon*, 751 F.Supp. 765, 768 (N.D.Ill.1990), which is clearly distinguishable from the instant case. In *Thomas*, the court found that the attempted rape of two girls by a transit worker of the Chicago Transit Authority was not under color of state law because the act was not "even remotely related to the performance of his job." *Id.* In the instant case, the alleged act occurred during the performance of Armstrong's job and in conjunction with the authority given to him as a result of his position as deputy. Action *is* taken under color of state law when it is made possible only because the wrongdoer is clothed with the authority of state law. *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir.1989) (emphasis added).

This Court finds that Plaintiff has alleged facts which could be sufficient for a jury to find that Armstrong was acting under the color of state law at the time that Plaintiff alleges her constitutional rights were violated. Additionally, the Complaint clearly alleges that the Sheriff was acting under color of state law at the time of the alleged incident inasmuch as he was serving in the capacity of Pasco County Sheriff, and presiding over the Pasco County Sheriff's Office. The Court denies the Motion to Dismiss as to this issue.

**B.  MUNICIPAL LIABILITY**

■ A local government official may be sued in his or her official capacity under Section 1983, where the local government may be sued in its own name. *Monell v. Dep't of Social Services of City of N.Y.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035–36, n. 55, 56 L.Ed.2d 611 (1978). In *Monell*, the Court held that a local governing body may be sued under 42 U.S.C. § 1983 if its "policy or custom" was "the moving force of the constitutional violation." *Id.* at 694, 98 S.Ct. at 2038. The Eleventh Circuit has recently stated that "only those officials who have final policymaking authority may render the municipality liable under Section 1983." *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir.1996) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). It has been established in Florida that the Sheriff is the policymaker and final authority for his agency. *Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir.1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988).

■ "Official policy may be established by the omissions of supervisory officials as well as their affirmative acts." *Avery v. County of Burke*, 660 F.2d 111, 114 (4th Cir.1981). Moreover, Section 1983 liability arises when actions or inactions on the part of the municipality lead to "deliberate indifference." *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir.1992).

■ Johnson has alleged that Defendant Cannon, in his official capacity as Sheriff of the Pasco County Sheriff's Office, had *de facto* policies, as well as customs, which were the moving force behind the deprivation of her Constitutional rights. If proven, Defendant's alleged failure to investigate, supervise, or discipline Armstrong may be sufficient to constitute liability. *See Rivas v. Freeman*, 940 F.2d 1491 (11th Cir.1991) (explaining that a sheriff may be liable for deprivation of Constitutional rights as a result of his failure to train, supervise, or discipline his deputies). The Court **denies** the Motion to Dismiss as to this issue.

## C. FOURTH AMENDMENT

The Fourth Amendment to the United States Constitution guarantees citizens the right to be secure against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The use of excessive force during an arrest, an investigatory stop, or any other seizure may violate the person's Fourth Amendment rights and be actionable under 42 U.S.C. § 1983. *Id.* at 388, 109 S.Ct. at 1867–68. A person has been seized for Fourth Amendment purposes when "the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988)). The test set forth in *Bostick* for determining whether a seizure has occurred implicating the Fourth Amendment or whether the encounter is consensual is:

> [I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

(*Bostick*, 501 U.S. at 439, 111 S.Ct. at 2389).

■ While the Sheriff correctly states that the alleged unlawful force did not occur during the detention resulting from the traffic infraction, it does not necessarily follow that Defendant Armstrong's actions at Plaintiff's residence did not themselves constitute a seizure for purposes of the Fourth Amendment. Under the above analysis, the allegations made by Johnson, if proven, may establish a violation of the Fourth Amendment. The Court **denies** the Motion to Dismiss as to this issue.

## D. FIFTH AMENDMENT

■ Defendant Cannon contends that Johnson cannot establish a cause of action pursuant to the Fifth Amendment because the protections afforded by this amendment are applicable only to federal actions. The Fifth Amendment is applicable to the actions of federal, not state government. *See Barron v. Mayor & City Council*, 32 U.S. 243, 7 Pet. 243, 8 L.Ed. 672 (1833); *Newsom v. Vanderbilt Univ.*, 653 F.2d 1100, 1113 (6th Cir.1981). Johnson has made no allegations that any of Armstrong's actions were made under color of federal law. The Court hereby **grants** the Motion to Dismiss as to any alleged Fifth Amendment violation.

## E. SIXTH AMENDMENT

■ Under the modern system of law enforcement and public prosecution, the "criminal prosecution" to which the Sixth Amendment refers begins when formal charges are filed. *Michigan v. Harvey*, 494 U.S. 344, n. 5, 110 S.Ct. 1176, n. 5, 108 L.Ed.2d 293 (1990) (Stevens, J., dissenting). In the instant case, Johnson was not the subject of a criminal prosecution. Beyond bare allegations that her Sixth Amendment rights were violated, Johnson has not alleged any facts that would implicate the protections provided by the Sixth Amendment. The Court **grants** the Motion to Dismiss as to any alleged Sixth Amendment violation.

## F. EIGHTH AMENDMENT

■ The Eighth Amendment is only implicated when there is the conviction of a crime because that amendment is intended simply to prohibit conduct that constitutes punishment. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Johnson was not convicted of a crime, and there were no allegations of conduct which constituted punishment. Thus, the implementation of the Eighth Amendment is inapplicable. The Court **grants** the Motion to Dismiss as to any alleged Eighth Amendment violation.

## G. FOURTEENTH AMENDMENT

■ A liberty interest which is protected by the due process clause of the Fourteenth Amendment is found in a person's bodily integrity. *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir.1994). In *Doe*, an act of sexual abuse by a state employee was found to have violated that right. *Id.* at

445. Additionally, the *Doe* Court found that supervisory personnel could be found liable for the deprivation of Constitutional rights, if the failure to supervise amounted to a deliberate indifference to the Plaintiff's Constitutional rights. *Id.*

The due process clause incorporates many of the specific protections defined in the Bill of Rights, thereby allowing a plaintiff to bring a suit for such claims as a violation of a First Amendment right to freedom of speech or a Fourth Amendment right to freedom from unreasonable searches and seizures. Plaintiff alleges that she was the subject of a "seizure" under the Fourth Amendment at the time her rights were violated. In its motion, Defendant Cannon states that Plaintiff fails to state a cause of action under the Fourteenth Amendment. The Court does not agree, and finds that Plaintiff has a Constitutional right under the Fourteenth Amendment to protect her liberty interest in her bodily integrity.

As all facts alleged by Plaintiff must be construed as true, the Court **grants** dismissal of Count I in part, and **denies** dismissal of Count I in part.

## IV. PENDENT STATE CLAIMS

"A court must find no liability as a matter of law if either (a) no duty of care existed, or (b) the doctrine of governmental immunity bars the claim." *Kaisner v. Kolb,* 543 So.2d 732, 734 (Fla.1989).

This Court disagrees with Defendant Cannon's assertion that no duty was owed to Plaintiff regarding Counts II, III, IV, and V. The Florida Supreme Court has found that law enforcement has a duty of care to protect detainees from personal harm. *Id.* When a person is "placed in some sort of custody or detention, he is owed a common law duty of care." *Id.* According to the facts set forth in the complaint, Johnson was owed a duty of care by Defendant Armstrong, as well as the Pasco County Sheriff's Office.

Defendant Cannon also asserts that even if there is a duty owed, liability is barred by sovereign immunity. The State of Florida has waived sovereign immunity for any act for which an individual could be held liable. *Fla.Stat.* § 768.28 (1996). On the face of the statute, this waiver does not attempt to distinguish between "particular kinds of governmental acts." *Kaisner,* 543 So.2d at 733. The Florida Supreme Court has repeatedly held "that liability may exist when the act of the government or its agent is not discretionary, but operational in nature." *Id.* at 736. *See Avallone v. Board of County Comm'rs,* 493 So.2d 1002, 1005 (Fla. 1986); *Commercial Carrier Corp. v. Indian River County,* 371 So.2d 1010 (Fla.1979). "An 'operational' function ... is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Kaisner,* 543 So.2d at 737. In an action for negligence, a court may review the way decisions are implemented. *Id.* at 738.

Section 768.28(9)(a), *Fla.Stat.* (1995), waives sovereign immunity in certain situations and provides, in part, that:

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

The Supreme Court of Florida has found that Sheriffs are included in "state agencies or subdivisions" under Section 768.28. *Beard v. Hambrick,* 396 So.2d 708 (Fla.1981). "A state agency is liable for a wrongful act or omission of any employee of the agency while acting within the scope of his office or employment under circumstances in which the state or agency, if a private person, would be liable to the claimant in accordance with the general laws of the state." *Dep't of Health & Rehabilitative Services v. McDougall,* 359 So.2d 528, 532 (Fla. 1st DCA 1978).

Florida courts have held that if an officer commits an intentional act within the scope of employment, the employing agency still remains liable. *See McGhee v. Volusia County,* 679 So.2d 729 (Fla.1996); *Hennagan v. Dept. of Highway Safety & Motor Vehicles,* 467 So.2d 748 (Fla. 1st DCA 1985); *Richardson v. City of Pompano Beach,* 511 So.2d 1121 (Fla. 4th DCA 1987), *rev. denied,* 519 So.2d 986 (Fla.1988). The fact that a deputy "may have intentionally abused his office does not in itself shield the sheriff from liability." *McGhee,* 679 So.2d at 733. It is up to the fact-finder to determine whether bad faith, malicious purpose, or willful or wanton disregard of human rights, safety, or property was present. *Id.*

Plaintiff has made allegations that relate to the operational function of the Pasco County Sheriff's office and the implementation of policies already in effect. The Complaint alleges facts which refer to the actual operation of the Sheriff's office. *See White v. County of Palm Beach,* 404 So.2d 123 (Fla. 4th DCA 1981) (stating that conduct involving the actual operation of a jail is not protected by sovereign immunity). According to the facts alleged in the Complaint, which address the operational function of the Pasco County Sheriff's Office, sovereign immunity has been waived as to Counts II, III, IV, and V of the Complaint have been waived under Section 768.28. Therefore, the Court **denies** the Sheriff's Motion to Dismiss Counts II, III, IV, and V. Accordingly, it is

**ORDERED** Defendant Lee Cannon's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 27) is **granted** in part and **denied** in part, as set forth above. Plaintiff shall file an Amended Complaint reflecting the Court's rulings within ten days of the date of this Order.